Alice LESHER and Charles Lesher,
Plaintiffs-Appellants,

v.

The Hon. Frank G. LAVRICH; Wellington Chapman, Director, Geauga County Department of Welfare; Ruth Baker, Toby Freeman, Brad Welch, and Barbara Griffin, Geauga County Department of Welfare; and Anthony J. Celebrezze, Jr., Attorney General of the State of Ohio, Defendants-Appellees.

No. 84–3930.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 4, 1985.

Decided Feb. 18, 1986.

Rehearing Denied March 18, 1986.

Robert M. Fertel, Cleveland, Ohio, for plaintiffs-appellants.

Steven G. Janik, Ulmer Berne, Laronge, Glickman & Curtis, Cleveland, Ohio, Anthony J. Celebrezze, Jr., Atty. Gen., Columbus, Ohio, Jeffrey J. Jurca, Richard A. Green, for defendants-appellees.

Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Appellants, the natural mother and stepfather of two allegedly "neglected" or "dependent" minor children, brought this action under 42 U.S.C. § 1983, seeking to

compel the State of Ohio to return their children to their custody. Appellants alleged that portions of Ohio's child protection law, Oh.Code Ann. § 2151.01 *et seq.* (Page 1976), were unconstitutional, either on their faces or as applied, in that they deprived appellants of their fundamental right to the care and custody of their children without due process of law. Appellants also claimed that Ohio's child protection procedures were unlawfully applied to them, because of the State's failure to comply with provisions of the federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 620 *et seq.* (1982) (Pub.L. 96–272) (the Adoption Assistance Act).

The record establishes that appellants' two children were removed from their custody immediately following a weekend visit to their natural father. The father noticed bruises on one of the girls, and in response to his report and after investigation, Ohio's Department of Public Welfare (DPW) filed a complaint against appellants. Two days after the complaint was filed, the Juvenile Division of the Geauga County Court of Common Pleas (the juvenile court) entered a finding that probable cause existed that the allegations of "dependency" and "neglect" were true, pursuant to a stipulation executed by the appellant-mother, who was represented by counsel then and thereafter. Subsequently, the juvenile court held two additional hearings, the last occurring four months later and resulting in findings of "dependency" and "neglect" on the parts of appellants. As a result of that hearing, the juvenile court took "temporary" legal custody of the children, releasing them to the care and custody of their natural father, with whom they had been residing on an emergency basis since the probable cause hearing. Throughout the proceedings, the appellant-mother was permitted supervised visitation with her children.

The juvenile court's decision was affirmed by the Ohio Court of Appeals for the Eleventh District, *In re Doyle,* No. 1147, slip op. (Eleventh District Court of Appeals of Ohio Oct. 26, 1984), and an appeal from that judgment was dismissed *sua sponte* by the Supreme Court of Ohio for want of a substantial constitutional question. *In re Doyle,* No. 84–1965 (Ohio Mar. 6, 1985).

Appellants' federal complaint was filed while the juvenile court action was pending. After considering the pleadings, affidavits and exhibits offered by the parties, the district court granted summary judgment in favor of all defendants. On appeal, appellants argue that the district court erred as a matter of law in dismissing their claims under the Adoption Assistance Act and under the due process clause of the fourteenth amendment. Appellees respond by arguing that the Adoption Assistance Act confers no private right of action on appellants, and that the district court did not err in concluding that Ohio's child protection procedures comport with the requirements of due process.[1]

We hold that appellants' constitutional claims are barred by principles of res judicata, and accordingly dismiss those portions of their appeal. While we assume that res judicata does not bar the Adoption Assistance Act claim, we conclude that the statute permits appellants no private right to pursue an action of this kind, and for that reason affirm in full the district court's dismissal of the complaint.

## I

■ The doctrine of res judicata generally prevents relitigation in a subsequent pro-

---

**1.** Appellees further argue that the district court should have abstained from hearing the § 1983 claim on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). On the record before us, it is at least clear that the *Younger* defense would raise a question about the propriety of federal court action. *See Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). However, although appellants plainly raised the issue of abstention—by denying its applicability—in the district court, the record reveals that, unaccountably, no defendant presented the *Younger* defense to the trial court. Since the state defendants-appellees chose not to request the district court to defer to the state court on the basis of comity, and since we conclude that the district court may be affirmed on other grounds, we need not consider further a possible defense based on abstention.

ceeding involving the same party adversaries of any issue that was or might have been decided in a prior judicial decision. *E.g. Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 578–79, 94 S.Ct. 806, 811–12, 39 L.Ed.2d 9 (1974) (final judgment on the merits binds parties "not only as to every matter which was offered and received to sustain or defeat the claim ..., but as to any other admissible matter which might have been offered for that purpose"); *Westwood Chemical Co., Inc. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981). *See also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (res judicata "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation"). When such actions proceed simultaneously, as here, the first judgment entered must be regarded as res judicata for issues in the remaining case. *E.g., Westwood Chemical Co. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981). The Supreme Court has noted that res judicata "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Accordingly, the law is well-settled that federal courts must give prior state court judgments the same preclusive effect they would have in the courts of that state. *Migra v. Warren City School District,* 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (applying Ohio law of res judicata); *FDIC v. Eckhardt,* 691 F.2d 245 (6th Cir.1982). *See also* 28 U.S.C. § 1738 (1982).

Appellees raised the defense of res judicata for the first time on appeal, and federal courts are divided over the issue of whether res judicata may be asserted as a defense for the first time on appeal. Sev-

eral circuits seem to hold that res judicata is an affirmative defense which, if not pleaded or otherwise properly raised at trial, is waived for purposes of appeal. *See, e.g., Savings & Profit Sharing Fund v. Gago,* 717 F.2d 1038, 1039 n. 3 (7th Cir. 1983); *Nevada Power Co. v. Watt,* 711 F.2d 913, 932–33 (10th Cir.1983); *Hifai v. Shell Oil Co.,* 704 F.2d 1425, 1428 (9th Cir.1983). Yet some circuits regard the desirability of avoiding duplicative litigation as sufficiently compelling to permit the court to raise the defense *sua sponte. E.g., Alyeska Pipeline Service Co. v. United States,* 688 F.2d 765, 771, 231 Ct.Cl. 540 (1982), *cert. denied* 461 U.S. 943, 103 S.Ct. 2120, 77 L.Ed.2d 1301 (1983); *American Furniture Co. v. International Accommodations Supply,* 721 F.2d 478, 482 (5th Cir.1981); *Robertson v. Interstate Securities Co.,* 435 F.2d 784, 787 n. 4 (8th Cir.1971).

█ This circuit has not passed on this issue as a general proposition, and we need not do so here. However, our prior decisions suggest that under these particular circumstances, we should not find this res judicata defense to have been waived by the failure of defendants to raise it in the district court. We have previously decided only that *express* waiver of collateral estoppel is permissible, as it is with any affirmative defense. *Chrysler Corp. v. United States,* 190 F.Supp. 412, 412–13 (D.Mich. 1960), *aff'd* 300 F.2d 154 (6th Cir.1962) (per curiam). *See also National Treasury Employees Union v. IRS,* 765 F.2d 1174, 1176 n. 1 (D.C.Cir.1985). Moreover, we have refused to find res judicata waived by a failure to plead where, as here, the prior judgment relied on "was clearly called to the District Court's attention before it rendered its decision," and where "having fully briefed ... the issue on appeal, [the party complaining was not] prejudiced thereby." *Westwood Chemical Co. v. Kulick,* 656 F.2d 1224, 1228 (6th Cir.1981).[2]

---

**2.** This court has also held that where one district judge had previously dismissed a complaint for lack of jurisdiction, another judge of the same district court properly dismissed a complaint "covering the same subject matter" *sua sponte. Hicks v. Holland,* 235 F.2d 183 (6th

Cir.1956). *See also United States v. Sioux Nation,* 448 U.S. 371, 432, 100 S.Ct. 2716, 2749, 65 L.Ed.2d 844 (1980) (if court is on notice that it has previously decided an issue before it, it may dismiss the action *sua sponte* ) (Rehnquist, J. dissenting).

Thus, our previous decisions have at least recognized that not every failure to plead res judicata as an affirmative defense, pursuant to the requirements of Fed.R.Civ.P. 8(c), will result in a waiver of that defense.

■ We conclude that under the circumstances of this case, this omission did not constitute a waiver of the right to assert the res judicata defense on appeal. At the time the district court entered its judgment, the only Ohio decision on appellants' constitutional claims was the decision of the juvenile court, and appeal was pending before the Ohio Court of Appeals. Moreover, appellants have not argued that appellees waived their res judicata defense by failure to assert it in the district court. Appellants' failure to object to appellees' raising of this issue on appeal suggests that both sides considered the judgment sufficiently "final" only after the decision of the intermediate state appeals court.

■ On the merits of the res judicata issue, there is no question that the law of Ohio precludes appellants from relitigating their constitutional claims. Appellants raised each of the constitutional issues in their § 1983 action as a defense to the neglect proceedings in the juvenile court. Affirmance of the juvenile court by the Eleventh District Court of Appeals, and dismissal of the appeal by the Ohio Supreme Court, indicate that the courts of Ohio have conclusively found that the challenged child protection proceedings comported with the requirements of the due process clause. Proper respect for the courts of Ohio, as required by principles of federalism and comity, commands us to give effect to their judgment in this matter. We therefore dismiss the appeal of the due process claims.

## II

Appellants' claim under the Adoption Assistance Act, 42 U.S.C. § 620 et seq., how-ever, stands on a different footing. While this claim may not be foreclosed by res judicata, we nevertheless conclude that it was properly dismissed by the district court.

### A

In the federal district court, appellants contended for the first time that the State's removal of their children from their custody was illegal because the State's child protection procedures lacked the "preplacement preventive service program" required by 42 U.S.C. § 627(b)(3). Relying on *Lynch v. Dukakis,* 719 F.2d 504 (1st Cir. 1983), appellants apparently theorized that any child protective services funded under the Act would be invalid in the absence of such a program, and accordingly sought return of their children and damages for their deprivation.

It appears that this claim could have been raised as a defense to the state proceedings, either in the juvenile court or on appeal. Under the law of some states, failure to raise such a claim—presenting distinct legal and factual issues, but based in the same underlying conduct by the defendant—might foreclose a subsequent lawsuit under principles of res judicata.[3] However, it is clear that a federal court must give to a state court judgment only the preclusive effect that it would have in the courts of that state. 28 U.S.C. § 1738; *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

Under the law of Ohio, it is at least a serious question whether the Adoption Assistance Act claim would be barred by res judicata from future consideration.[4] We therefore assume, without deciding, that the Adoption Assistance Act claim is not barred from subsequent litigation in federal court by the decisions of the Ohio courts.

---

**3.** *See, e.g.,* Restatement (Second) of Judgments § 24(1) (1981) (the claim precluded by a first judgment "... includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose")

**4.** The leading Ohio case indicates that failure to raise a related claim precludes future litigation only of the "same cause of action." *Norwood v. McDonald,* 142 Ohio St. 299, 52 N.E.2d 67, 71 (1943). Courts have struggled with the exact meaning of this language, but the court in *Norwood, id.* at 73, and this court have concluded that the operative test is "[w]hether different

**B**

Although we assume that their Adoption Assistant Act claim is not barred by res judicata, appellants still are entitled to a trial of that claim only if the Act permits a private cause of action, to correct violations, to be pursued under 42 U.S.C. § 1983. The district court concluded that:

> § 627(b)(3) is merely a funding statute enacted to encourage State child welfare services and does not confer upon individuals a federal right to preventive services or reunification plans when there is a child abuse problem within the family unit.

*Lesher v. Lavrich*, No. C83–3411, slip op. at 8 (N.D.Ohio Sept. 13, 1984).

We agree with the district judge's conclusion that appellants' alleged claim does not state a cause of action, but we reach this result by different reasoning. Appellants relied on the First Circuit's decision in *Lynch v. Dukakis*, 719 F.2d 504 (1st Cir.1983), *aff'g Lynch v. King*, 550 F.Supp. 325 (D.Mass.1982), as authority for their claim under the Adoption Assistance Act. Contrary to the district court's decision, the First Circuit concluded that the Act permits parents and children affected by substantive provisions of the Act to pursue a private cause of action under § 1983, and to obtain an injunction forcing the State to bring its child protection laws into compliance with those provisions. *Id.* at 509–12.

In light of this opinion, we are reluctant to conclude that the district court in the instant case was correct in determining that the Adoption Assistance Act is "mere-

ly a funding statute" which permits no private enforcement. However, we need not decide this question, because the rationale supporting the First Circuit's decision in *Lynch* has no applicability to the present case. *Lynch* was a class action, brought to force the State of Massachusetts to revise its child protection procedures to comply with the conditions for federal funding set forth in the Adoption Assistance Act. The plaintiffs did not seek damages, nor did they seek to undo prior child protective actions taken by the State—they sought only to force the State to institute the case plan and review procedures required by §§ 671(a)(16) and (b) of the Act.

It may be reasonable to read the Adoption Assistance Act to permit parents and children affected by the programs it funds to sue to force those programs to comply with the federal funding requirements; however, the instant action presents entirely different issues. Neither appellants' amended complaint, nor either of their briefs even remotely suggest that this action sought the prospective relief of requiring the State to revise its procedures and institute, in the future, "preplacement preventive service plans" for all child protection cases. Rather, the complaint sought only retrospective relief, in the form of damages for the appellees' past conduct, and an injunction unwinding the prior neglect and dependency decision.

We think it obvious that whatever rights the Adoption Assistance Act might confer on parents, relief nullifying a prior state court judgment of child neglect or depend-

---

proofs are required to sustain the two actions." *FDIC v. Eckhardt*, 691 F.2d 245, 248 (6th Cir. 1982); *Duncan v. Peck*, 752 F.2d 1135, 1139 (6th Cir.1985). As this court noted in *Eckhardt*, while *Norwood* has been criticized, *see* 1B Moore's Federal Practice, ¶ 0.410[1] at p. 358 (2d Ed.1982), it remains the law of Ohio. *See, e.g., Migra v. Warren City School District Board of Education*, 104 S.Ct. at 899; *Duncan v. Peck*, 752 F.2d at 1139; *Johnson's Island, Inc. v. Board of Township Trustees*, 69 Ohio St.2d 241, 431 N.E.2d 672, 674–75 (1982).

Application of this narrow governing standard suggests that the Adoption Assistance Act claim might not be barred from federal court litigation, because it is not the "same cause of

action" presented by the constitutional claims actually decided by the Ohio courts. While some of the same facts would be relevant to both lawsuits—such as the dates and mechanics of removal of the children from appellants' custody—recovery under the statute would not turn on these essentially uncontested matters. Rather, in order to prevail on their statutory claim, appellants would have to prove an entirely different set of facts, not at issue in the constitutional claims. Among these would be Ohio's eligibility for and acceptance of Adoption Assistance Act funds, and Ohio's failure to adopt procedures that satisfy the requirement of a "preplacement preventive service program." 42 U.S.C. § 627(b)(3).

ency, or awarding damages in connection therewith, would not be available. An otherwise valid finding of neglect or dependency could not be rendered invalid—at least not under this statute—merely by the failure of the State to undertake an obligation to offer preventive services. Such a result would permit even clearly abusive parents to escape the State's child protection apparatus, and could not have been any part of the Congressional intent underlying the rights that may be established by the Act. As to damages, since the juvenile court's decisions depriving appellant of the custody of their children would remain valid despite the State's alleged failure to institute the program contemplated by the Act, appellants were not unlawfully deprived of their children by any such failure, and therefore could not be awarded damages under this statute for this deprivation.

We therefore hold that the district judge did not err in dismissing appellants' Adoption Assistance Act claim.

The judgment of the district court is Affirmed in all respects.

ORDER

This cause comes before the Court upon the petition of the appellants for rehearing, the judgment of the district court having been affirmed on February 18, 1986. Although the petition was labelled as one seeking rehearing and rehearing en banc, it was not accompanied by a proper certification as required by Rule 14, Rules of the Sixth Circuit; further, counsel has advised that the petition be filed as one seeking panel review only.

The court has considered the petition and the argument made therein, and concludes that its judgment was not predicated on any misapprehension or misapplication of any issue of fact or law.

It is therefore ORDERED that the petition for rehearing be, and it hereby is, denied.

WELLFORD, Circuit Judge concurring.

Federal courts are sometimes criticized for becoming involved in essentially state concerns which, it is argued, should be determined by state courts. Among the critics are sometimes those who represent state agencies or facilities such as school and prison administrators, or those who have to do with setting or establishing state policies. Federal courts have generally resisted efforts of those, who, like the plaintiffs here, have sought to pursue a purported 42 U.S.C. § 1983 claim in the area of domestic relations or child care. Child custody has generally been left to state law and state courts to decide. This case would seem to be an obvious candidate for the commendable doctrine of abstention but for the fact that this specific suggestion was not raised in the district court by the state officials or state administrators named as defendants. Since considerable judicial time and effort has now already been devoted to this controversy, I concur that it is best that we not pursue the question as to whether abstention may be invoked, *sua sponte*, by this court. It is, however, regrettable defendants did not conserve federal court time and energy by promptly raising the dual defenses of abstention and *res judicata*.

I concur fully in the conclusion that *res judicata* bars plaintiffs' constitutional claims and that plaintiffs, under the circumstances of this case, have no private cause of action against defendants under the Adoption Assistance Act.